SCOTT J. SAGARIA (BAR # 217981)
sjsagaria@sagarialaw.com
ELLIOT W. GALE (BAR #263326)
egale@sagarialaw.com
JOE B. ANGELO (BAR #268542)
jangelo@sagarialaw.com
SCOTT M. JOHNSON (BAR #287182)
sjohnson@sagarialaw.com
**SAGARIA LAW, P.C.**
3017 Douglas Blvd., Ste. 100
Roseville, CA 95661
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff
Lillie Jackson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| **LILLIE JACKSON,** | CASE NO. |
| Plaintiff, | COMPLAINT FOR DAMAGES: |
| v. | 1. Violation of Fair Credit Reporting Act; |
| Equifax, Inc.; TransUnion, LLC; ERC, Citibank, N.A., and DOES 1 through 100 inclusive, | 2. Violation of California Consumer Credit Reporting Agencies Act; |
| Defendants. | |

COMES NOW Plaintiff **LILLIE JACKSON**, an individual, based on information and belief, to allege as follows:

### INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a). Plaintiff seeks redress for the unlawful and deceptive practices committed

by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt included in Plaintiff's Chapter 13 bankruptcy.

2. This case involves accounts that have not been updated to reflect the account included in Plaintiff's Chapter 13 bankruptcy filing and instead continue reporting the status of the accounts in collections.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

4. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

5. The *majority* of consumer Debtors who file consumer bankruptcy do so to *raise* their FICO Score and remedy their poor credit worthiness.

6. It is entirely possible for consumer Debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

7. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

8. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.

9. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

10. These credit reporting issues are most prevalent in Chapter 13 bankruptcy filings.

11. Consequently, in the United States today it is objectively worse for consumers' credit worthiness to file Chapter 13 and pay back some or all of their debt, as opposed to filing Chapter 7 liquidation where Creditors generally receive nothing.

12. This was not the intent of Congress when enacting the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

13. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

14. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

15. This venue is proper pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

16. Plaintiff alleges that each and every defendant data furnisher was included in Plaintiff's Chapter 13 bankruptcy filing.

17. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

18. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

19. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

20. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

21. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

22. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

23. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

24. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

25. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

26. There are 28 FICO Scores that are commonly used by lenders.

27. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

28. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

29. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

30. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

31. Each of the five factors is weighted differently by FICO.

32. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

33. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

34. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

35. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

36. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

37. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

**Metro 2**

38. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

39. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

40. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

41. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

42. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:

   a. The CDIA offers a FCRA certificate program for all CRAs.

   b. The CDIA offers a FCRA awareness program for all CRAs.

   c. The CDIA offers a FCRA Certificate program for DFs.

   d. The CDIA offers a FCRA awareness program for DFs.

e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

43. The CDIA's Metro 2 is accepted by all CRAs.

44. The credit reporting accepted industry standards for reporting metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

45. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

46. The CRRG is not readily available to the public. It can be purchased online for $229.45.

47. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

48. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

49. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

50. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

51. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

52. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

53. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator

54. When a consumer files bankruptcy certain credit reporting industry standards exist.

55. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

56. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

57. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

58. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

59. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

60. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

61. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

62. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

63. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

64. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

65. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

66. The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay exists to prevent *in personam* collection activity.

67. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

68. Under the Fair Credit Reporting Act a bankruptcy can be reported for ten years.

69. The ten-year rule for reporting runs from the date the bankruptcy was *filed.*

70. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

71. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

72. Failure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

### Plaintiffs Bankruptcy Filing

73. Plaintiff filed for Chapter 13 bankruptcy protection on April 24, 2015 in order to reorganize and repair Plaintiff's credit worthiness and FICO Score.

74. Defendants ERC and Citibank were creditors listed in Plaintiff's chapter 13 filing and received notice of the filing and other related documents.

75. Plaintiff's plan was confirmed on July 1, 2015.

76. The CDIA recognizes the finality of confirmation orders and the aforementioned credit reporting industry guidelines are specifically setup to harmonize the bankruptcy code and credit reporting guidelines.

77. On January 24, 2017 Plaintiff ordered a credit report from Equifax, Inc. to ensure proper reporting by Plaintiff's Creditors.

78. Plaintiff noticed several different trade lines on the January 24, 2017 credit report all reporting inaccurate, misleading, or incomplete information that did not comport with credit reporting industry standards.

79. In response, Plaintiff disputed the inaccurate tradelines via certified mail with Experian Information Solutions, Inc.; Equifax, Inc.; and TransUnion, LLC on February 7, 2017.

80. Plaintiff's dispute letter specifically put ERC and Citibank on notice that Plaintiff had filed for bankruptcy and to update the accounts appropriately.

81. Plaintiff's dispute letter also indicated that the accounts should not be marked as in collections or charged off.

82. Plaintiff noted that the accounts should be marked disputed if the investigation disagrees with Plaintiff's dispute.

83. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.

84. On March 24, 2017 Plaintiff ordered a second credit report from Experian Information Solutions, Inc.; Equifax, Inc. and TransUnion, LLC to ensure Plaintiff's accounts had been updated.

**Inaccuracy**

85. Defendant ERC was reporting Plaintiff's account, beginning in 11929xxxx, inaccurately.

86. ERC was reporting Plaintiff's account as in collections and without reference to any chapter 13 filing.

87. It appears that Plaintiff's account is in active collections and not subject to Plaintiff's chapter 13 bankruptcy.

88. Plaintiff's account with ERC is not in collections

89. Defendant ERC is not following industry standards and is not listing the correct Consumer Information Indicator as the Consumer Information Indicator D should be reported.

90. Plaintiff included this account in her bankruptcy filing however Defendant ERC continues to report the account as if the account were subject to collections.

91. Any lender reviewing Plaintiff's credit report will no doubt view this account as subject to potential wage garnishments and or levies.

92. Thus Plaintiff appears derelict in addressing this outstanding debt which she is not and such reporting makes Plaintiff less credit worthy.

93.  Similarly, Defendant Citibank was also reporting Plaintiff's account, beginning in 5424xxxx, inaccurately.

94.  Defendant Citibank continued to report Plaintiff's account, post dispute, as in collections and without referencing the Chapter 13 filing.

95.  Plaintiff's account appears to still be in a collectable stage which is inaccurate and misleading as it was included in Plaintiff's confirmed chapter 13 plan.

96.  Plaintiff's account with Citibank is not in collections.

97.  Defendant Citibank is not following industry standards and is not listing the correct Consumer Information Indicator as the Consumer Information Indicator should have been updated to D instead of kept as in collections.

98.  Plaintiff included this account in her bankruptcy filing however Defendant Citibank continues to report the account as if the account were subject to collections.

99.  Any lender reviewing Plaintiff's credit report will no doubt view this account as subject to potential wage garnishments and or levies.

100.  Thus Plaintiff appears derelict in addressing this outstanding debt which she is not and such reporting makes Plaintiff less credit worthy.

**Damages**

101.  Plaintiff pulled the credit report at issue, post dispute process, at a cost of $39.95, specifically for the sole purpose of verifying that the inaccuracies were fixed.

102.  As a result of the incorrect reporting, Plaintiff has suffered economic loss, emotional harm, diminished credit and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code and the power of this Court to preserve and perpetuate a fresh start.

103.  The actions of the Defendants Equifax, Inc., TransUnion, LLC, Citibank, and ERC as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

104.  The actions of the Defendants Citibank and ERC as alleged herein are acts in violation of the Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a).

## FIRST CAUSE OF ACTION

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to Assure Credit Reporting Accuracy.**

105. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

106. Equifax, Inc., and TransUnion, LLC violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

### Willfulness

107. The violations described herein by Equifax and TransUnion were willful.

108. Equifax and TransUnion have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

109. Equifax and TransUnion intentionally send consumer disputes to employees who do not live within the continental United States.

110. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

111. These employees for Equifax and TransUnion receive little to know training concerning how to accurately report consumer debt.

112. Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX).

113. Equifax and TransUnion employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

114. Equifax and TransUnion have intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

115. Consequently, Defendants Equifax and TransUnion are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

116. In the alternative, Equifax and TransUnion were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

117. As a result of Equifax's and TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

118. The violations of Equifax and TransUnion, LLC were willful, rendering it  liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

119. In the alternative, Equifax and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

120. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax and TransUnion in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**ERC, Citibank, N.A. –Failure to Reinvestigate.**

121. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

122. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

123. Defendants ERC and Citibank violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

124. The CRAs provided notice to the ERC and Citibank  that Plaintiff was disputing the inaccurate and misleading information but ERC and Citibank failed to conduct a reasonable investigation of the information as required by the FCRA.

125. Based on Plaintiff's dispute, ERC and Citibank should have known their accounts were included in Plaintiff's Chapter 13 plan of reorganization. The most basic investigation would include a simple review of well-established credit reporting industry standards.

126. Plaintiff alleges ERC and Citibank did not review well established industry standards for credit reporting.

127. If ERC and Citibank had reviewed such standards ERC and Citibank would have seen their reporting was not in compliance and consequently inaccurate and or incomplete.

128. Such an investigation would be unreasonable.

129. Plaintiff also alleges that ERC and Citibank did not investigate whether Plaintiff filed for bankruptcy, whether their accounts were included, the terms of the plan, or whether or not the terms had been approved.

130. The lack of investigation is unreasonable.

**Willfulness**

131. Plaintiff further alleges that ERC and Citibank have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such has developed reckless policies and procedures.

132. In addition to lack of training the employees are expected not to investigate disputes but instead simply verify the disputed information is in fact accurate.

**Equifax, Inc. and TransUnion, LLC – Failure to Reinvestigate Disputed Information 15 USC 1681i-(a)1.**

133. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

134. After Plaintiff disputed the accounts mentioned above, Equifax and TransUnion were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

135. Plaintiff alleges that Equifax and TransUnion has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.

136. Equifax and TransUnion are not passive entities bound to report whatever information a DF provides.

137. Plaintiff alleges that Equifax and TransUnion are readily familiar with Metro 2 guidelines and credit reporting industry standards.

138. In fact, Equifax and TransUnion sponsor and authorize workshops hosted by the CDIA that teach the following to DFs:

    a.   Do not report delinquencies post petition pre discharge in the payment history section regardless of Chapter 7 or Chapter 13. Instead report the Metro 2 indicator D.

    b.   In Chapter 13 cases do not report past due balances post confirmation.

    c.   In Chapter 13 cases do not report balances that are inconsistent with the terms of the Chapter 13 plan.

    d.   In Chapter 13 cases do not report monthly payments that are inconsistent with the terms of the Chapter 13 plan.

    e.   The above reporting is the correct and accurate way to report debts included in consumer bankruptcy filings.

139. Given the aforementioned, Plaintiff alleges that Equifax and TransUnion can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

140. Equifax and TransUnion can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

141. Equifax and TransUnion failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.

142. Equifax and TransUnion would have known that Plaintiff filed for Chapter 13 based on multiple other accounts reporting as much.

143. Equifax and TransUnion would have known that Plaintiff's plan had been confirmed based on multiple other accounts reporting as much.

144. Equifax and TransUnion would have known that failure to report a CII given that a Chapter 13 was filed did not comport with industry standards.

145. Equifax and TransUnion therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

## THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(2)(A))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to send dispute**

146. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein and pleads in the alternative

147. Equifax and TransUnion violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide Defendants with all the relevant information regarding Plaintiff's disputes.

148. As a result of Equifax and TransUnion's violation of 15 U.S.C. § 1681i(a)(2)(A), Plaintiff suffered actual damages, including but not limited to: damage to reputation, diminished credit, embarrassment, humiliation, and other mental and emotional distress.

149. The violations by Equifax and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

150. In the alternative, Equifax and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

151. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax and TransUnion in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to Review and Consider All Relevant Information.**

152. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

153. Equifax and TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

154. As a result of Equifax and TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to: loss of credit worthiness, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

155. The violations by Equifax and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

156. In the alternative, Equifax and TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

157. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax and TransUnion in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FIFTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to Delete Disputed and Inaccurate Information.**

158. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

159. Equifax and TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the dispute inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

160. As a result of Equifax and TransUnion violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to: loss of creditworthiness, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

161. The violations by Equifax and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

162. In the alternative, Equifax and TransUnion was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

163. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SIXTH CAUSE OF ACTION

(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants and Does 1-100)

**ERC and Citibank– Reporting Inaccurate Information to CRAs.**

164. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

165. In the regular course of its business operations, both ERC and Citibank routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

166. ERC and Citibank  intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comport with well-established industry standards.

167. Plaintiff alleges that ERC and Citibank  re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

168. Plaintiff also alleges that ERC and Citibank  had reason to know that the information reported on Plaintiff's accounts were misleading, inaccurate, incomplete, and did not comport with well-established credit reporting industry standards.

169. Plaintiff alleges that ERC and Citibank  had reason to know that by not comporting with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

170. Plaintiff alleges that the bankruptcy notices, disputes letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to ERC and Citibank  of its misleading and inaccurate reporting as well as being noticed of the plan confirmation and proof of claim forms sent by the U.S. Bankruptcy Court.

171. ERC and Citibank  failed to notify Equifax, Inc. and TransUnion, LLC that the information Defendant ERC and Citibank re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

172. Both ERC and Citibank's  communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were

done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

173. As a direct and proximate result of both ERC and Citibank's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to inability to properly reorganize under Chapter 13, reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;

3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;

5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o;


Dated: September 18, 2017

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

Dated: September 18, 2017        **SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff